# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KIMBERLY MANNING, an individual,<br><br>            Plaintiff,<br><br>      v.<br><br>SPECIALIZED LOAN SERVICING, LLC, a Delaware limited liability company;<br>NEWREZ, LLC, a Delaware limited liability company;<br>BANK OF AMERICA CORPORATION, a Delaware corporation;<br>THE BANK OF NEW YORK MELLON, a New York corporation;<br>QBE, INC., a California corporation; and<br>DOES 1-100, inclusive,<br><br>            Defendants. | Case No. 8:25-cv-02435-JWH-DFM<br><br>**ORDER REGARDING DEFENDANTS' MOTION TO DISMISS [ECF No. 9]; PLAINTIFF'S MOTION TO REMAND [ECF No. 13]; and PLAINTIFF'S MOTION TO AMEND [ECF No. 15]** |

Before the Court are three motions:

- the motion of Defendants Newrez, LLC; Specialized Loan Servicing, LLC; and The Bank of New York Mellon[1] to dismiss the first amended complaint[2] of Plaintiff Kimberly Manning;
- Manning's motion to remand;[3] and
- Manning's motion to amend the Amended Complaint.[4]

The Court concludes that these matters are appropriate for resolution without a hearing. *See* Fed. R. Civ. P. 78; L.R. 7-15. After considering the papers in support of, and in opposition to, the Motions,[5] the Court **GRANTS without leave to amend** Defendants' Motion to Dismiss, **DENIES** Manning's Motion to Remand, and **DENIES** Manning's Motion to Amend.

## I. BACKGROUND

Manning filed the instant action in Orange County Superior Court in March 2025.[6] In her operative Amended Complaint, Manning asserts the

---

[1]    Defs.' Mot. to Dismiss (the "Motion to Dismiss") [ECF No. 9].

[2]    First Am. Compl. (the "Amended Complaint") [ECF No. 1-2].

[3]    Pl.'s Mot. to Remand (the "Motion to Remand") [ECF No. 13].

[4]    Pl.'s Mot. to Amend (the "Motion to Amend") [ECF No. 15].

[5]    The Court considered the documents of record in this action, including the following papers: (1) Motion to Dismiss; (2) Motion to Remand; (3) Motion to Amend; (4) Defs.' Req. for Judicial Notice re the Motion to Dismiss ("Defendants' RJN") [ECF No. 11]; (5) Defs.' Req. for Judicial Notice re the Motion to Amend and the Motion to Remand ("Defendants' Second RJN") [ECF No. 20]; (6) Defs.' Opp'n to the Motion to Amend (the "Opposition to Amend") [ECF No. 17]; (7) Defs.' Opp'n to the Motion to Remand (the "Opposition to Remand") [ECF No. 18]; (8) Pl.'s Opp'n to the Motion to Dismiss (the "Opposition to Dismissal") [ECF No. 22]; (9) Defs.' Replies in Supp. of the Motion to Dismiss [ECF Nos. 21 & 23]; and (10) Amended Complaint.

[6]    *See* Notice of Removal (the "Notice") [ECF No. 1].

following claims arising from alleged events related to the mortgage on her house (the "Mortgage") and her junior home equity line of credit on that property (the "HELOC"):

- breach of written/oral contract;
- violation of California Fair Debt Practices/Rosenthal Act and Cal. Civ. Code § 3439;
- unfair business practices under Cal. Bus. & Prof. Code § 17200;
- negligent misrepresentation;
- fraud; and
- intentional infliction of emotional distress.

**A.    Factual Allegations**

Manning's Amended Complaint is somewhat unclear, but apparently in 2014, Manning was charged for insurance in addition to the mortgage payments that she was already making.[7] Manning contacted Defendants regarding those insurance charges, and a dispute ensued.  Manning apparently understood that that dispute was resolved through a 2015 settlement agreement between herself and Defendants Newrez and The Bank of New York Mellon (the "Settlement Agreement"), which "put [the HELOC which had an outstanding balance of $42,000] 'on the back end.'"[8] According to Manning, that "mean[t] per attorney Hurwitz [of Newrez] that the second mortgage [(i.e., the HELOC)] would be deferred to the end of the primary mortgage [(i.e., the Mortgage)]."[9] Manning alleges that the parties entered into the Settlement Agreement orally, but that it was also memorialized in emails.[10] The Amended Complaint is not

---

[7]    Amended Complaint ¶ 10.

[8]    *Id.* at ¶ 12.

[9]    *Id.*

[10]    *Id.*

clear when, but at some point after the parties reached the Settlement Agreement, Manning and Defendants entered into what Manning refers to as the "HAMP," which apparently modified the terms of the Mortgage.[11]

Manning alleges that in late 2023—after years during which she received no bills—Defendants transmitted a bill on the HELOC, which took Manning by surprise because she understood that the Settlement Agreement had deferred her obligations on the HELOC until after she fully paid the Mortgage.[12]

**B.      Procedural History**

In April 2025, Manning amended her complaint to include "QBE, Inc., a California Corporation" as a Defendant.[13]  In October 2025, Manning voluntarily dismissed QBE, with prejudice, and Defendants promptly removed the action to this Court because QBE's dismissal resulted in complete diversity between Manning and the remaining Defendants.[14]

Manning contends that she dismissed QBE when she discovered that the correct name for the entity that she intended to sue is "QBE Group, Inc.," which is also a California corporation.[15]  Manning further represents that her intention was to add the correctly named QBE Group as a Defendant but that

---

[11]      The Court understands "the HAMP" to refer to the 2016 Home Affordable Modification Agreement between Manning and Newrez. Defendants' RJN, Ex. 4 (the "Modification Agreement") [ECF No. 11-4].  The Court **GRANTS** Defendants' RJN with respect to the 2016 Home Affordable Modification Agreement—to which the Amended Complaint refers as the "HAMP"—because it is referenced in the Amended Complaint, it is central to Manning's claim, and no party questions its authenticity.  *See* Fed. R. Evid. 201; *United States v. Corinthian Colleges*, 655 F.3d 984, 999 (9th Cir. 2011).

[12]      Amended Complaint ¶ 13.

[13]      *See generally id.*

[14]      *See* Notice.

[15]      Motion to Amend 2:5-11.

-4-

she was prevented from doing so when Defendants removed the action to this Court.[16]  Manning now seeks leave to amend her pleading to add QBE Group as a Defendant.  Presuming success on her Motion to Amend, Manning simultaneously moves for remand, arguing that the addition of QBE Group as a Defendant destroys complete diversity and divests this Court of subject matter jurisdiction.  Defendants oppose both of Manning's Motions, and they filed a Motion to Dismiss Manning's Amended Complaint.  All Motions are fully briefed.

## II.  LEGAL STANDARD

### A.    Leave to Amend

Ordinarily, pursuant to the Federal Rules of Civil Procedure, a district court "should freely give leave" to amend a pleading "when justice so requires."  Fed. R. Civ. P. 15(a).[17]  However, when, as is the case here, a plaintiff seeks to amend her complaint after removal to add a diversity-destroying defendant, the court applies 28 U.S.C. § 1447(e), which provides that it "may deny joinder, or permit joinder and remand the action to the State court."  *Id.*; *see also Donald v. Xanitos, Inc.*, 2015 WL 1774870, at *2 (N.D. Cal. Apr. 17, 2015).  That statute "is couched in permissive terms"; it "clearly gives the district court the discretion to deny joinder."  *Newcombe v. Adolf Coors Co.*, 157 F.3d 686, 691 (9th Cir. 1998).  In exercising its discretion, a district court

---

[16]    *Id.*

[17]    Because Manning "already amended [her] complaint once as a matter of right in state court, [she is] required to first seek leave to amend or [Defendants'] written consent before filing the [Second Amended Complaint]."  *Hosp. Mktg. Concepts, LLC v. Inter-Cont'l Hotels Corp.*, 2015 WL 13284964, at *2 (C.D. Cal. Oct. 21, 2015); *see also Butner v. Neustadter*, 324 F.2d 783, 785 (9th Cir. 1963) ("The federal court takes the case as it finds it on removal and treats everything that occurred in the state court as if it had taken place in federal court.") (footnote omitted).

"consider[s] a variety of non-exhaustive factors:  (1) whether plaintiff's purpose is dilatory; (2) whether joinder is solely for the purpose of defeating jurisdiction; (3) whether the delay in joinder is explainable; (4) whether the statute of limitations has run against the defendant; (5) whether plaintiff can state valid claims against the joined defendant; and (6) whether justice requires the party's inclusion."  *Andrews v. Nationstar Mortg., LLC*, 2014 WL 12607671, at *3 (C.D. Cal. Sept. 8, 2014).

## B.    Motion to Remand

Federal courts are courts of limited jurisdiction.  Accordingly, "[t]hey possess only that power authorized by Constitution and statute."  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  In every federal case, the basis for federal jurisdiction must appear affirmatively from the record.  *See DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 n.3 (2006).  "The right of removal is entirely a creature of statute and a suit commenced in a state court must remain there until cause is shown for its transfer under some act of Congress."  *Syngenta Crop Prot., Inc. v. Henson*, 537 U.S. 28, 32 (2002) (internal quotation marks omitted).  When Congress has acted to create a right of removal, those statutes, unless otherwise stated, are strictly construed against removal jurisdiction.  *See id.*

To remove an action to federal court under 28 U.S.C. § 1441, the removing defendant "must demonstrate that original subject-matter jurisdiction lies in the federal courts."  *Syngenta*, 537 U.S. at 33.  As such, a defendant may remove a civil action in which either (1) a federal question exists; or (2) complete diversity of citizenship between the parties exists and the amount in controversy exceeds $75,000.  *See* 28 U.S.C. §§ 1331 & 1332.  "Complete diversity" means that "each defendant must be a citizen of a different state from each plaintiff."  *In re Digimarc Corp. Derivative Litigation*, 549 F.3d 1223, 1234 (9th Cir. 2008).  When the litigants are entities, diversity jurisdiction depends

on the form of the entity. *See, e.g.*, *Carden v. Arkoma Assocs.*, 494 U.S. 185, 195–96 (1990) (finding that an unincorporated association such as a partnership has "the citizenships of all of its members"). Similarly, a limited liability company is a "citizen of every state of which its owners/members are citizens." *Johnson v. Columbia Properties Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006). In contrast, a corporation is a citizen only of (1) the state where its principal place of business is located; and (2) the state in which it is incorporated. *See* 28 U.S.C. § 1332(c)(1).

The right to remove is not absolute, even when original jurisdiction exists. In other words, the removing defendant bears the burden of establishing that removal is proper. *See Abrego Abrego v. Dow Chem. Co.*, 443 F.3d 676, 684 (9th Cir. 2006) (noting the "longstanding, near-canonical rule that the burden on removal rests with the removing defendant"); *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) ("The strong presumption against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper." (quotation marks omitted)). Any doubts regarding the existence of subject matter jurisdiction must be resolved in favor of remand. *See id.* ("Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance.").

## C.    Motion to Dismiss

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims asserted in a complaint. *See Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). In ruling on a Rule 12(b)(6) motion, "[a]ll allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." *Am. Family Ass'n v. City & County of San Francisco*, 277 F.3d 1114, 1120 (9th Cir. 2002). Although a complaint attacked by a Rule 12(b)(6) motion "does not need detailed factual allegations," a plaintiff must provide "more than labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

To state a plausible claim for relief, the complaint "must contain sufficient allegations of underlying facts" to support its legal conclusions. *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact) . . . ." *Twombly*, 550 U.S. at 555 (citations and footnote omitted). Accordingly, to survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," which means that a plaintiff must plead sufficient factual content to "allow[] the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). A complaint must contain "well-pleaded facts" from which the Court can "infer more than the mere possibility of misconduct." *Id.* at 679.

Normally, Rule 12(b)(6) is read in conjunction with Rule 8(a), which requires a "short and plain statement of the claim showing that a pleader is entitled to relief," in order to give the defendant "fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555; *see also Horosny v. Burlington Coat Factory, Inc.*, 2015 WL 12532178, at *3 (C.D. Cal. Oct. 26, 2015). A claim alleging fraud, however, is subject to a heightened pleading standard. *See* Fed. R. Civ. P. 9(b). Rule 9(b) requires that circumstances constituting a claim for fraud or mistake be pleaded with particularity. *See id*. That rule requires a plaintiff to "identify the who, what, when, where and how of the misconduct charged" as well as "what is false or misleading about a statement, and why it is false." *Ebeid* ex rel. *United States v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010). Additionally, it is well settled in the Ninth Circuit that the Federal Rules of Civil Procedure, including Rule 9(b), apply in federal court, "irrespective of the source of the subject matter jurisdiction, and irrespective of

whether the substantive law at issue is state or federal." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009).

### III.  ANALYSIS

**A.     Motion to Amend**

Defendants argue that Manning's proposed amendment—adding QBE Group as a party Defendant—is a sham intended to destroy diversity, and, thus, the Court should closely scrutinize and ultimately deny Manning's Motion. Because the joinder of QBE Group would destroy diversity and would divest this Court of jurisdiction, the Court analyzes Manning's Motion to Amend under 28 U.S.C. § 1447(e) and applies the six factors articulated in *Andrews*.  *See Andrews*, 2014 WL 12607671, at *3.  Those factors counsel against joinder.

First, the Court concludes that the joinder of QBE Group is solely for the purpose of defeating jurisdiction.  Other than noting that she hopes to join QBE Group in place of the erroneously named QBE—which she dismissed while the case was still pending in state court—Manning does not explain why QBE Group is relevant to the litigation.  In the proposed Second Amended Complaint attached to Manning's Motion to Amend, the only alleged actions of QBE Group occurred in 2014—more than 10 years before Manning filed the instant action.[18]  Manning apparently seeks to allege that QBE Group participated in a scheme to defraud her by charging her for "forced" insurance in 2014 at the direction of Defendant Specialized Loan Servicing, Manning's then-service provider.[19]  It is unclear why Manning cannot obtain the relief that she seeks from Specialized Loan Servicing and the other named Defendants.  Accordingly, the Court concludes that Manning's sole reason for seeking to join QBE Group is to defeat jurisdiction.

---

[18]     Pl.'s Proposed Second Am. Compl. [ECF No. 15-4] ¶¶ 6, 10, 45, & 55.

[19]     *Id.* at ¶ 10.

Furthermore, the Court concludes that the statute of limitations for Manning's claims has likely run against QBE Group.  Manning knew of QBE Group's alleged actions more than 10 years before she filed the instant action—a period far longer than the statutes of limitations for any of her claims.  Manning makes no argument to the contrary.[20]  Finally, the Court is unaware of any reason that justice would require QBE Group's inclusion in this action.

Having considered the relevant factors, the Court concludes that the joinder of QBE Group would be improper, and, thus, it **DENIES** Manning's Motion to Amend.

**B.    Motion to Remand**

Because the Court denies Manning's Motion to Amend, there is no basis upon which to remand.  The Court is satisfied that it possesses diversity jurisdiction over the instant action, and, thus, it **DENIES** Manning's Motion to Remand.[21]

**C.    Motion to Dismiss**

Defendants argue that the Court should dismiss Manning's Amended Complaint because all of her claims are barred by either one or both of the statute of frauds or the applicable statute of limitations.

---

[20]    Manning requests that the Court assess her Motion to Amend with increased leniency because she is a *pro se* litigant.  *See* Motion to Amend 6:8-21. While Manning apparently represents herself, she is an attorney licensed to practice in California.  Accordingly, Manning should be familiar with the court system, and the Court declines to treat her any differently from any other litigant.

[21]    The Court **DENIES as moot** Defendants' Second RJN.  The Court concludes that the facts that Defendants list in that request are unnecessary for the Court to decide the instant Motions.

### 1. Statute of Frauds

The California statute of frauds provides that an agreement by a purchaser of real property to pay an indebtedness secured by a deed of trust against the property purchased—or a modification to such an agreement—is invalid unless it is "in writing and subscribed by the party to be charged." Cal. Civ. Code §§ 1624(a) & (c). Defendants argue that the alleged 2015 Settlement Agreement that purportedly subsumed the HELOC within the Mortgage falls within the statute of frauds, and, because Manning does not allege that she ever received "a writing signed by any defendant stating that the HELOC was released or otherwise disposed of," the Settlement Agreement cannot be enforceable.[22] Thus, Defendants assert that all of Manning's claims that depend on the existence of the Settlement Agreement must be dismissed.[23]

In her Opposition to Dismissal,[24] Manning responds that the statute of frauds was satisfied because the settlement offer was made and accepted in writing.[25] The Amended Complaint alleges that the Settlement Agreement was "orally made but also in emails where there is written offer and a written acceptance of the settlement."[26] Manning admits that she "no longer has all the

---

[22]    Motion to Dismiss 11:15-20.

[23]    Defendants contend that all of Manning's claims, except her negligence and intentional infliction of emotional distress claims, depend on the validity of the Settlement Agreement, and Manning does not contest that contention. The Court agrees with Defendants that those claims are premised upon the existence of the Settlement Agreement.

[24]    The Court notes that Manning did not file her Opposition to Dismissal in a timely manner, but, in the interest of adjudicating the case on its merits, the Court exercises its discretion to consider Manning's untimely opposition. *See* L.R. 7-12 (stating that the court "may" decline to consider untimely filings).

[25]    Opposition to Dismissal 6:5-28.

[26]    Amended Complaint ¶ 12.

-11-

emails sent to her," but she maintains that discovery will enable her to recover the emails that satisfy the statute of frauds.[27]  Manning also refers to two letters attached to the Amended Complaint, which she contends satisfy the statute of frauds.[28]

The letters that the Court understands Manning to be referencing do not contain any statements or signatures by Defendants.  Rather, they are signed by "Kimberly Manning" and "Kimberly Wind,"[29] and they summarize her understanding that a settlement was reached.[30]  In the November 2015 letter, Manning states, "I await the final paperwork showing our settlement of this dispute and the refi with the separate back end loan.  If I get it, and you live up to the deal with no default on the missed payments as they will be deferred and a lower interest rate, then I agree we don't need a settlement agreement so long as I get the documents showing our agreement."[31]  Although that letter demonstrates that Manning expected to receive a writing from Defendants, she does not include such documentation.

Nevertheless, the Court concludes that Manning's allegation that the settlement offer was conveyed to her by Defendants by email is sufficient to plead that the Settlement Agreement satisfies the statute of frauds.  Accordingly, the Court concludes that the statute of frauds does not bar Manning's claims.

---

[27]     Opposition to Dismissal 6:12-16.

[28]     *Id.* at 6:15-20.

[29]     The Court understands "Kimberly Wind" to refer to Plaintiff Kimberly Manning.

[30]     Amended Complaint, Ex. 2 41 & 49.

[31]     *Id.* at 49.

### 2.   Statutes of Limitations

Defendants also argue that all of Manning's claims are barred by the applicable statutes of limitations.  Manning counters that the statutes of limitations have been tolled by intentional fraudulent acts of Defendants that prevented her from being able to discover her claims.[32]  Manning also contends that because Defendants did not send a bill for approximately 10 years, she could not have discovered her breach of contract, Rosenthal Act, negligence, or intentional infliction of emotional distress claims.[33]

The Court understands Manning to be arguing that the delayed discovery exception applies.  "In order to invoke the delayed discovery exception to the statute of limitations, the plaintiff must specifically plead facts which show (1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence."  *Yumul v. Smart Balance, Inc.*, 733 F. Supp. 2d 1117, 1130 (C.D. Cal. 2010) (citation modified).  "When the defendant is guilty of fraudulent concealment of the cause of action the statute of limitations is deemed not to become operative until the aggrieved party discovers the existence of the cause of action.  A defendant's fraud in concealing a cause of action against him will toll the statute of limitations, and that tolling will last as long as a plaintiff's reliance on the misrepresentations is reasonable.  Absent a fiduciary relationship, nondisclosure is not fraudulent concealment— affirmative deceptive conduct is required."  *Id.* at 1131 (citation modified).

Manning herself acknowledges that it is incumbent on the plaintiff to exercise reasonable diligence in pursuing the bases for potential legal claims.[34]  In addition, Manning must plead fraudulent concealment with particularity.  *See*

---

[32]   Opposition to Dismissal 8:2-12:15.

[33]   *Id.* at 12:16-14:28 & 15:12-28.

[34]   *Id.* at 9:7-10.

*389 Orange Street Partners v. Arnold*, 179 F.3d 656, 662 (9th Cir. 1999). At most, Manning alleges that Defendants orally agreed to alter the terms of the HELOC but never gave her written signed confirmation of that modification and then delayed sending her bills on the HELOC for 10 years. While Defendants' acts may be confusing, they do not rise to the level of intentional fraudulent concealment. If Manning had exercised reasonable diligence earlier by demanding a formal written settlement or making inquiries regarding the status of her HELOC, she may very well have discovered the injury of which she now complains. Rather, Manning's Amended Complaint is premised on injuries of which she was aware in 2014, and any subsequent injuries were not fraudulently concealed from her. Accordingly, the Court concludes that the statutes of limitations are not tolled.

The statutes of limitations for Manning's claims are determined by California law, *see Yumul*, 733 F. Supp. 2d at 1130, and they are as follows:

- two years for breach of written/oral contract: Cal. Civ. Proc. Code § 339(1);
- one year for violation of California Fair Debt Practices/Rosenthal Act and Cal. Civ. Code § 3439: Cal. Civ. Code § 1788.30(f);
- four years for unfair business practices: Cal. Bus. & Prof. Code § 17208;
- two years for negligent misrepresentation: Cal. Civ. Proc. Code § 339;
- three years for fraud: Cal. Civ. Proc. Code § 338(d); and
- two years for intentional infliction of emotional distress: Cal. Civ. Proc. Code § 335.1.

Manning had reason to know of the injuries underlying all of her claims—except arguably her unfair debt practices and intentional infliction of emotional distress claims—by 2016 at the latest. Specifically, the allegedly fraudulent insurance activity occurred in 2014, and the 2016 HAMP makes clear that the terms that Manning believed were included in the Settlement Agreement were

-14-

not reflected in Defendants' understanding of the material terms.[35] Accordingly, all of those claims are barred by the applicable statutes of limitations.

With respect to her unfair debt practices claim, the Court concludes that Manning had reason to know of her alleged harm in late 2023 when Defendants sent her a bill for the HELOC.[36]  Thus, by the time that Manning filed the instant action in 2025, the one-year statute of limitations barred that claim. Finally, of the acts upon which Manning premises her intentional infliction of emotional distress claim, only foreclosure occurred in the two years before she filed this lawsuit.  And Defendants are correct that mere foreclosure, even wrongful foreclosure, cannot give rise to an intentional infliction of emotional distress claim.  *See Davenport v. Litton Loan Servicing, LP*, 725 F. Supp. 2d 862, 884 (N.D. Cal. 2010).  Accordingly, all of Manning's claims are barred by the applicable statutes of limitations.

Because Manning cannot cure the statute of limitations-related defects in her Amended Complaint, the Court **GRANTS** Defendants' Motion to Dismiss and **DISMISSES** Manning's Amended Complaint **without leave to amend**.

### IV.  DISPOSITION

For the foregoing reasons, the Court hereby **ORDERS** as follows:

1. Manning's Motion to Amend [ECF No. 15] is **DENIED**.

2. Manning's Motion to Remand [ECF No. 13] is **DENIED**.

3. Defendants' Motion to Dismiss [ECF No. 9] is **GRANTED**. Manning's Amended Complaint is **DISMISSED without leave to amend**.

---

[35]    Modification Agreement.

[36]    Amended Complaint ¶ 13.

-15-

4.   Judgment will issue accordingly.

**IT IS SO ORDERED.**

Dated: _July 10, 2026_

_____
John W. Holcomb
UNITED STATES DISTRICT JUDGE